UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES EDWARD CORING III,

        Plaintiff,

v.                                Case No. 3:14-cv-162-J-34JBT

ISIAH GRIFFIN AND
D.K. KIRBY,

        Defendants.

_____

## ORDER

### I. Status

Plaintiff Charles Edward Coring III, an inmate of the Florida penal system, initiated this action on February 7, 2014, by filing a pro se Civil Rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983. Coring filed an Amended Complaint (Doc. 21) on April 28, 2014, a Second Amended Complaint (Doc. 29) on October 26, 2015, and a Third Amended Complaint (TAC; Doc. 35) with a Memorandum of Law and Facts (Doc. 36), and an Amended Affidavit (Doc. 37) on December 11, 2015. In the TAC, Coring names the following Defendants: (1) Sergeant Isiah Griffin; (2) Officer D.K. Kirby; (3) Officer B. Roberts; and (4) Officer R. Holmes.[1] He asserts that the Defendants

_____

[1] The Court granted Plaintiff's Motion to Drop Defendants B. Roberts and R. Holmes, and dismissed Defendants R. Holmes and Brandy Minnich (Roberts) from the action. See Order (Doc. 146) at 4, ¶3.

violated his federal constitutional rights when they failed to protect him from an inmate assault and used excessive force against him on March 14, 2013. As relief, he seeks compensatory and punitive damages.

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Motion; Doc. 183) with exhibits (P. Ex.) and Michael T. Holmes Jr.'s (MT Holmes) Motion for Summary Judgment (Holmes' Motion; Doc. 185) with exhibits (Holmes Ex.). Coring responded to Holmes' Motion. <u>See</u> Response to Holmes' Motion for Summary Judgment (P. Response; Doc. 187). Defendants responded to Coring's Motion. <u>See</u> Defendants Griffin and Kirby's Response to Plaintiff's Motion for Summary Judgment (Def. Response; Doc. 188) with exhibits (Def. Ex.). Neither Defendants nor Plaintiff submitted any video evidence. The Motions are ripe for review.

## II. Plaintiff's Allegations

In his verified TAC,[2] Coring maintains that Defendants Griffin and Kirby violated his Eighth and Fourteenth Amendment rights when they were deliberately indifferent to his health and safety needs.

---

[2] <u>See</u> <u>Stallworth v. Tyson</u>, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

See Complaint at 8-10. As to the underlying facts[3] of his claims, Coring asserts that officers placed him in "full body restraints" (handcuffs, waist chains, and shackles) for transportation to another facility on the morning of March 14, 2013. Id. at 11. According to Coring, Griffin and Kirby knowingly disregarded Coring's safety needs when they left Coring's "known enemy" (inmate Anthony Slack, Florida Department of Corrections (FDOC) inmate number 975277) without any restraints and unsupervised in the foyer of N-dormitory, so Slack could "ambush" Coring during the escort. Id. Coring states that he used his property bag as self-defense to "ward off" Slack's attack. Id. He avers that the escort officers watched "the fight" for one to two minutes, cheered for Slack, and then ended it. Id.

According to Coring, as Defendants Griffin and Kirby entered the foyer, Griffin directed Kirby and "the other officers" to use force against Coring. Id. at 12. Coring describes Kirby's involvement:

> Once Officer "D.K. Kirby" reached [Coring][,]
> [Kirby] pushed [Coring] out the front door of
> N-Dorm[,] [t]hen picked [Coring] up at the
> waist[,] [w]hile he was still in full body
> restraints and lift[ed] him off the ground and

---

[3] The recited facts are drawn from the TAC and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on Coring's Motion as to Griffin and Kirby (the only remaining Defendants), the Court's recitation of the facts will focus on Coring's allegations as to these Defendants.

> slam[m]ed him on his face to the ground. Then
> started punching [Coring] in the head.

Id. (capitalization omitted). Coring states that other officers came outside of N-dormitory, and kicked him in the head, arms, and shoulders. See id. He maintains that Griffin "only stood by at the door jam[] looking out the front door of N-dorm," and never directed Kirby and the other officers to stop beating Coring. Id. He avers that Griffin never properly disciplined Slack. See id. According to Coring, he suffered head, neck and lower back injuries as a result of Kirby's use of force. See id. at 13.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rules(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[4] An issue is genuine when the evidence is such that a

---

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment
> remains unchanged. The language of subdivision

reasonable jury could return a verdict in favor of the non-moving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64

---

(a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

<u>Id.</u> "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." <u>Campbell v. Shinseki</u>, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### IV. Summary of the Arguments

In the Motion, Coring requests that the Court enter summary judgment in his favor because Defendants Griffin and Kirby's use of force "was not done so in a good faith effort to maintain or restore discipline, but rather, was done so maliciously and sadistically to cause harm." Motion at 6. Defendants maintain that there are genuine issues of material fact that preclude the entry of summary judgment in Coring's favor. <u>See</u> Def. Response at 6. In Holmes' Motion, he maintains that Coring's claim against him is "a case of misidentification" because he was not involved in any of the alleged events. Holmes' Motion at 6. Holmes therefore requests that the Court enter summary judgment in his favor. <u>See</u> <u>id.</u> at 6-9. Coring states that "MT Holmes is not a Defendant in this action, and a dismissal or the entry of an Order holding that he is not a

Defendant" would be appropriate. P. Response at 1. He therefore requests that the Court deny Holmes' request for summary judgment, and enter an order stating that "Michael T. Holmes is not a named Defendant in this action, and no further action need be taken on his behalf." Id. at 3.

## V. Discussion

### A. MT Holmes

Coring names R. Holmes as a Defendant in the operative Complaint. See TAC (Doc. 35). Service of process was returned unexecuted as to R. Holmes with the following explanation: "unable to locate R. Holmes at Columbia C.I., had a[n] M. Holmes, but he no longer works for the Department." Return of Service (Doc. 48). The Court directed Coring to notify the Court whether he intended to pursue claims against M. Holmes instead of R. Holmes. See Order (Doc. 51). Coring advised the Court that he wanted to pursue claims against M. Holmes. See Notice (Doc. 56). Assistant General Counsel Alexandria Williams (FDOC, Office of the General Counsel) provided a confidential address for MT Holmes, and the Court redirected service of process at that confidential address. Docs. 58, 61 (sealed). The record reflects that service of process was executed on MT Holmes on August 25, 2016. Doc. 67 (sealed).

Coring filed a Motion to Drop Defendants (Doc. 140), requesting to dismiss Defendants B. Roberts and R. Holmes. Defendants responded, stating that they had no objection to the

entry of an order dismissing Defendants B. Roberts and MT Holmes (identified as R. Holmes in the operative complaint). <u>See</u> Defendants' Notice of Non-Objection to Dismissal of Defendants Roberts and Holmes (Doc. 142). Recognizing the name discrepancies, the Court granted Coring's request, and dismissed Defendants R. Holmes and B. Roberts. <u>See</u> Order (Doc. 146). Additionally, the Court directed Coring to advise the Court, by May 1, 2017, whether he intended to pursue claims against MT Holmes. <u>See</u> <u>id.</u> at 4, ¶4. Coring neither responded nor advised the Court of his intentions as to his pursuit of claims against MT Holmes.

MT Holmes maintains that he was not involved in the March 14, 2013 incident, and therefore, requests that the Court grant summary judgment in his favor. <u>See</u> Holmes' Motion at 6-9. He avers, in pertinent part:

> That he is employed as a corrections officer for the Florida Department of Corrections and is presently assigned to Florida State Prison in Raiford, Florida.
>
> That on March 14, 2013, he was employed as a corrections officer for the Florida Department of Corrections and was assigned as a housing officer of N dormitory at Columbia Correctional Institution Annex and was working the day shift.
>
> That at 0930 on March 14, 2013, he was working in N dormitory. He did not participate in any escort of Inmate Charles Coring, III, and was not present during any use of force which took place during said escort. He did not participate in and has no knowledge of any use of force against Charles Coring, III, on the above-referenced date and time. He did not

witness any use of force of any kind or by anyone against Charles Coring, III, on the above-referenced date and time.

That he did not participate in the use of force investigation involving Charles Coring, III, on March 14, 2013, because he was neither involved in nor a witness to the incident in question. His name is not mentioned in the use of force documents or the Incident Report.[5]

That he has no knowledge of what occurred between Charles Coring, III, and Inmate Anthony Slack, or the use of force involving Charles Coring, III, and Corrections Officer Derek Kirby, both of which occurred on March 14, 2013, as he was not present during any part of either incident.

That he did not physically punch, kick or otherwise assault or batter Inmate Coring on March 14, 2013, or on any other date, and has never witnessed any other corrections officer commit such acts.

Holmes Ex. 6, Affidavit at 1-2 (enumeration omitted). Coring now explains that MT Holmes is <u>not</u> a named Defendant in the action, and therefore, requests that the Court deny Holmes' request for summary judgment and dismiss Holmes from this action. <u>See</u> P. Response at 3. With the benefit of Coring's clarification, the Court will grant Coring's request to dismiss his claims against MT Holmes. As such, Holmes' Motion is due to be denied as moot since Coring has advised the Court that he is not pursuing any claims against MT Holmes.

---

[5] <u>See</u> Holmes Exs. 2, Report of Force Used; 3, Incident Report; 4, 5, MINS Incident Reports.

## B. Isiah Griffin and D.K. Kirby

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendants.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). It is "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." Id. at 828 (citations omitted). The deliberate indifference standard requires the plaintiff to demonstrate that the prison official "was

subjectively aware" of a risk of harm; mere negligence is not
sufficient. Id. at 829, 835-36.

> A prison official violates the Eighth
> Amendment "when a substantial risk of serious
> harm, of which the official is subjectively
> aware, exists and the official does not
> respond reasonably to the risk." Carter v.
> Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)
> (quotation marks omitted and alterations
> adopted) (emphasis added). To survive summary
> judgment on a failure-to-protect claim under
> the Eighth Amendment, "a plaintiff must
> produce sufficient evidence of (1) a
> substantial risk of serious harm; (2) the
> defendants' deliberate indifference to that
> risk; and (3) causation." Goodman, 718 F.3d at
> 1331 (quotation marks omitted).[6]

> "The second element—that [a prison official]
> evidenced a deliberate indifference to a
> serious risk that [a prisoner] would be
> injured—forms the crux of the matter at hand."
> Id. The prison official must "actually
> (subjectively) know[] that an inmate is facing
> a substantial risk of serious harm, yet
> disregard[] that known risk by failing to
> respond to it in an (objectively) reasonable
> manner." Rodriguez v. Sec'y for Dep't of
> Corr., 508 F.3d 611, 617 (11th Cir. 2007).
> With regard to the subjective component of the
> defendant's actual knowledge, the defendant
> "must both be aware of facts from which the
> inference could be drawn that a substantial
> risk of serious harm exists, and he must also
> draw the inference." Farmer, 511 U.S. at 837,
> 114 S.Ct. at 1979.

> Moreover, this must be shown by "conduct that
> is more than gross negligence." Townsend v.
> Jefferson Cnty., 601 F.3d 1152, 1158 (11th
> Cir. 2010). "[T]he deliberate indifference
> standard—and the subjective awareness required
> by it—is far more onerous than normal

---

[6] Goodman v. Kimbrough, 718 F.3d 1325 (11th Cir. 2013).

> tort-based standards of conduct sounding in negligence: 'Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983.'" <u>Goodman</u>, 718 F.3d at 1332 (quoting <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537 (11th Cir. 1990)).

<u>Losey v. Thompson</u>, 596 F. App'x 783, 788-89 (11th Cir. 2015).

Thus, to establish an Eighth Amendment violation, an inmate must show that a prison official "actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." <u>Rodriquez</u>, 508 F.3d at 617 (citing <u>Farmer</u>, 511 U.S. at 837, 844) (footnote omitted). "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference." <u>Brown v. Hughes</u>, 894 F. 2d 1533, 1537 (11th Cir. 1990).

Prison officials may avoid Eighth Amendment liability in one of three ways: (1) showing that they were not aware "of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) admitting awareness of "the underlying facts" of a substantial danger, but believing the danger was "insubstantial or nonexistent"; or (3) claiming they responded reasonably to a known substantial danger. <u>Rodriquez</u>, 508 F.3d at 617-18 (quoting <u>Farmer</u>, 511 U.S. at 844) (internal quotations omitted). To satisfy the subjective knowledge requirement, a plaintiff must show that a prison official is "aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." _Farmer_, 511 U.S. at 837. Whether a prison official "had the requisite knowledge of a substantial risk is a <u>question of fact</u> subject to demonstration in the usual ways, including inference from the circumstantial evidence." <u>Rodriquez</u>, 508 F.3d at 617 (emphasis in original).

With respect to the appropriate analysis in an excessive use of force case, the Eleventh Circuit has explained.

> [O]ur core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In determining whether force was applied maliciously and sadistically, we look to five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates[, as reasonably perceived by the responsible officials on the basis of facts known to them]..." <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations omitted).[7]

<u>McKinney v. Sheriff</u>, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). "When considering these factors, [courts] 'give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made

---

[7] <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986).

13

at the scene of a disturbance.'" Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). Indeed, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9 (citation omitted). Notably, a lack of serious injury is relevant to the inquiry. See Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam) (quoting Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (per curiam)). The United States Supreme Court explained.

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. Id. at 7, 112 S.Ct. 995 (opinion of the Court).[8] "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Ibid. (quoting Whitley, supra, at 321, 106 S.Ct. 1078).[9] The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a

---

[8] Hudson, 503 U.S. 1.

[9] Whitley v. Albers, 475 U.S. 312 (1986).

14

federal cause of action." 503 U.S. at 9, 112
S.Ct. 995. "The Eighth Amendment's prohibition
of 'cruel and unusual' punishments necessarily
excludes from constitutional recognition de
minimis uses of physical force, provided that
the use of force is not of a sort repugnant to
the conscience of mankind." Id., at 9–10 (some
internal quotation marks omitted). An inmate
who complains of a "'push or shove'" that
causes no discernible injury almost certainly
fails to state a valid excessive force claim.
Id., at 9 (quoting Johnson v. Glick, 481 F.2d
1028, 1033 (2d Cir. 1973)).[10]

Injury and force, however, are only
imperfectly correlated, and it is the latter
that ultimately counts. An inmate who is
gratuitously beaten by guards does not lose
his ability to pursue an excessive force claim
merely because he has the good fortune to
escape without serious injury.

Wilkins, 559 U.S. at 37–38.

Coring requests that the Court enter summary judgment in his
favor because Defendants Griffin and Kirby were deliberately
indifferent to his health and safety needs on March 14, 2013. See
Motion at 2-3, 6-8. Defendants Griffin and Kirby maintain that
there are genuine issues of material fact that preclude the Court's
entry of summary judgment in Coring's favor. See Def. Response at
6. In support of their position, Defendants submitted their own
affidavits, see Def. Exs. 1, Derek Kirby's affidavit (Kirby Aff.);
3, Isiah Griffin's affidavit (Griffin Aff.), and other exhibits,
see Def. Exs. 2, William Cook's affidavit (Cook Aff.); 4, the

---

[10] See Johnson, 481 F.2d at 1033 ("Not every push or shove,
even if it may later seem unnecessary in the peace of a judge's
chambers, violates a prisoner's constitutional rights.").

Columbia Correctional Institution Annex (CCIA) Incident Report; 5,

the Columbia Correctional Institution (CCI) Emergency Room Record.

Defendant Kirby states, in pertinent part:

> That on March 14, 2013, he was employed as a corrections officer for the Florida Department of Corrections and was assigned as a housing officer of N dormitory at Columbia Correctional Institution Annex and was working the day shift.

> That at 0930 on March 14, 2013, he was assisting officer Christopher Roberts and Officer William Cook with an inmate escort from N dormitory to receiving. The escorted inmate was Inmate Charles Coring, III.

> That while departing the vestibule of N dormitory, Inmate Charles Coring, III, DC# V15426, while in full restraints, became disorderly by spitting, lunging and swinging his property in an aggressive manner toward Inmate Slack. At this time the Affiant gave a direct order to Inmate Coring to cease his actions but he refused and continued moving toward Inmate Slack.

> That it became necessary to use force to prevent injury on Inmate Slack. Affiant placed both hands around Inmate Coring's upper torso area and redirected him to the ground face down. He released his hold on Inmate Coring's upper torso area and placed his left hand on Inmate Coring's upper left arm and his right hand on Inmate Coring's upper back, ordering Inmate Coring to cease his actions. Inmate Coring ceased his actions and complied with all orders, and all force by Affiant ceased. Affiant then assisted Inmate Coring to his feet and turned him over to other officers for post use of force medical follow up.

> That no one punched or kicked Inmate Coring or directed any physical abuse or violence against him. The only force used against Inmate Coring was the force used by

the Affiant, and that force was the minimum
needed to neutralize Inmate Coring's
disorderly behavior.

That neither Sgt. Isiah Griffin nor
Officer Michael T. Holmes were present during
or witness to the reactionary use of force
involving Inmate Coring on March 14, 2013,
which use of force is described herein in
paragraph 6. The only officers present were
the Affiant and Christopher Roberts and
William Cook.

Kirby Aff. (enumeration omitted); Def. Ex. 4, CCIA Incident

Report.[11] Officer Cook similarly describes the March 14, 2013

incident involving Kirby and Coring. See Cook Aff. Additionally,

Defendant Griffin states, in pertinent part:

That at 0930 on March 14, 2013, [Griffin]
was attending a sergeant's meeting, at which
time he heard a call over his radio stating
that there had been a use of force in N dorm.
After hearing the radio call he proceeded to N
dorm in the company of the Officer in Charge,
Captain Robert Mercado. By the time he arrived
at the scene of the incident, all use of force
was over. He did not witness any use of force
of any kind or by anyone against Charles
Coring, III, on the above-referenced date and
time.

That he did not direct Officer Derek
Kirby or any other corrections officer to
perform any act of force, restraint or
violence or any other type of action against
inmate Charles Coring, III, on the above-
referenced date and time.

That he did not participate in the use of
force investigation involving Charles Coring,

---

[11] According to Captain Robert Mercado, handheld videotaping
began at approximately 9:37 a.m. and continued until 9:47 a.m.,
when officers placed Coring in a cell. See Def. Ex. 4 at 1.

III, on March 14, 2013, because he was neither
actively involved or a witness to the incident
in question. The Officer in Charge, Captain
Mercado, was in charge of the investigation.

That he has no knowledge of what occurred
between Charles Coring, III, and inmate
Anthony Slack, or the use of force involving
Charles Coring, III, and Corrections Officer
Derek Kirby, both of which occurred on March
14, 2013, as he was not present during any
part of either incident.

Griffin Aff. (enumeration omitted).

After the incident involving Kirby and Coring, officers
immediately escorted Coring for a post-use-of-force assessment at
the CCI medical clinic. See Def. Ex. 4 at 1. At approximately 9:36
a.m. that morning, Nurse K. Roberson, SLPN, assessed Coring's
injuries as follows: "[Inmate] has swelling to r[igh]t 3rd
metacarpal joint (knuckle) from previous injury. [I]ndentations to
bilat[eral] wrist from cuffs. [No] visible injuries noted to neck
or back[.] [No] open areas or bleeding noted." Def. Ex. 5. Upon
arriving at Florida State Prison (FSP) at approximately 3:00 p.m.
that afternoon, Coring was escorted to the FSP medical clinic for
a pre-confinement physical with the following injuries noted: "mild
swelling to the back of the head, swelling to the right eye, and
swelling behind the right ear." P. Ex. A, FSP Incident Report.[12] The
United States Supreme Court has acknowledged that the extent of the
injury is a factor that may provide some evidence of the amount of

_____

[12] According to an FSP Incident Report, videotaping began when
Coring arrived at FSP at 3:30 p.m. See P. Ex. A.

force applied and whether the use of force was necessary under the specified circumstances. See Wilkins, 559 U.S. at 37-38. However, a court ultimately should decide an excessive force claim based on the nature of the force used rather than the extent of the injury. Id. at 38.

Defendant Kirby and Officer Cook provide similar accounts and opine that Kirby used only a minimal amount of force to bring Coring into compliance with Kirby's directives. Additionally, Defendant Griffin avers that he neither has knowledge of Coring and Slack's encounter, nor Kirby's use of force upon Coring because he was not present at either incident. Nevertheless, Coring maintains that Defendants Griffin and Kirby knowingly put him in an unsafe situation, which resulted in Slack beating Coring and Kirby using excessive force upon Coring.

Upon review of the record, it appears that Coring's Motion is due to be denied. At a minimum, the record before the Court reflects genuine issues of material fact as to whether (1) Griffin and Kirby knowingly disregarded Coring's safety needs when they left Coring (in restraints) in the presence of inmate Slack (without restraints), (2) Griffin directed Kirby to use force upon Coring, (3) Kirby used an excessive amount of force upon Coring, and (4) Griffin watched as Kirby assaulted Coring.[13] While Coring

---

[13] "[L]iability can be imposed upon prison guards who are present at the scene and who are in a position to intervene but fail to take reasonable steps to stop excessive force by other

and Defendants agree that Kirby used force, the parties present
markedly different accounts regarding whether Kirby used force in
a good-faith effort to maintain or restore discipline, or applied
it maliciously and sadistically to cause harm. Coring asserts that
Kirby's alleged assaultive behavior was unnecessary and excessive,
and involved punching. In contrast, Kirby maintains that he used
only necessary force to restore order, bring Coring into compliance
with his verbal order, and cease Coring's combative behavior. The
parties offer significantly different accounts of Kirby's use of
force, his motivation for forcing Coring to the ground, and the
involvement and motivation of Griffin.

In ruling on a motion for summary judgment, a court cannot
engage in impermissible credibility determinations. See Furcron v.
Mail Centers Plus, LLC, 843 F.3d 1295, 1304 (11th Cir. 2016); Hall
v. Bennett, 447 F. App'x 921, 924 (11th Cir. 2011) (reversing the
district court's grant of summary judgment because the court
improperly "weighed the witnesses' credibility by favoring" the
officer's account over the prisoner-plaintiff's). On this record,
the Court finds that there remain genuine issues of material fact
as to Coring's failure-to-protect, excessive-use-of-force, and
failure-to-intervene claims relating to the March 14, 2013 incident
at CCIA. As such, Plaintiff's Motion is due to be denied.

---

guards . . . ." Clark v. Argutto, 221 F. App'x 819, 826 (11th Cir.
2007) (per curiam).

## VI. Settlement Discussions

A settlement conference was held on March 29, 2017. See Clerk's Minutes (Doc. 136). The parties did not reach a settlement, and the Court declared an impasse. See id. Two weeks later, Coring filed a motion for appointment of counsel. See Doc. 148. On April 28, 2017, the Court granted Coring's motion for appointment of counsel, and referred the case to the Jacksonville Division Civil Pro Bono Appointment Program so that the designated deputy clerk of this Court could seek counsel to represent Coring. See Order (Doc. 151). The Court stayed the case for sixty days so that the designated clerk could find counsel for Coring. See id. On June 30, 2017, the Court appointed counsel to represent Coring. See Order Appointing Counsel for Plaintiff (Doc. 168). Since the March 29, 2017 settlement conference, the parties have further developed the facts and have filed dispositive motions. Additionally, Coring has the benefit of counsel to represent his position. Therefore, the Court will direct the parties to confer in good faith to attempt to reach a settlement.

Based on the foregoing, it is now

**ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. 183) is **DENIED**.

2. Plaintiff's request to dismiss MT Holmes is **GRANTED**, and Plaintiff's claims against MT Holmes are **DISMISSED**.

3.    MT Holmes' Motion for Summary Judgment (Doc. 185) is **DENIED as moot**.

4.    The parties must confer in good faith to discuss the issues and the possibility of settlement. **No later than March 22, 2019**, they must notify the Court whether they are able to reach a settlement. If the parties are unable to settle the case privately among themselves, they must notify the Court if they wish to have the case referred to a United States Magistrate Judge for a settlement conference.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of February, 2019.

**MARCIA MORALES HOWARD**
United States District Judge

sc 2/25
c:
Counsel of Record